UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

                           :

UNITED STATES OF AMERICA

                           :

       -v.-                                 S4 16 Cr. 672 (KPF)

                           :

JOSEPH ATUANA, and
AYODELE ADENIRAN,

                           :

               Defendants.

                           :

------------------------------------------------------------------x

# THE GOVERNMENT'S MOTIONS *IN LIMINE*

 

                                        JOON H. KIM
                                        Acting United States Attorney for the
                                        Southern District of New York
                                        One St. Andrew's Plaza
                                        New York, New York 10007
                                        Attorney for the United States

Rebekah Donaleski
Nicholas Folly
Andrew D. Beaty
Assistant United States Attorneys
-Of Counsel-

# CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ..................................................................................................................... 1

DISCUSSION .......................................................................................................................... 3

    I.    The Defendants' Prior Arrests and Atuana's Conviction Are Admissible As Direct Proof, or in the Alternative, Other Acts Evidence .................................................................... 3

        A.    Applicable Law............................................................................................................ 4

            1. Other Acts Evidence as Intrinsic or Direct Proof ............................................. 4

            2. Other Acts Evidence Pursuant to Rule 404(b) ................................................. 5

        B.    Discussion.................................................................................................................. 7

            1. Atuana's New York State Arrest and Conviction............................................. 7

            2. Adeniran's New York State Arrests ................................................................. 10

    II.    The Court Should Enforce the Terms of Atuana's Proffer Agreement ........................... 12

        A.    Applicable Law............................................................................................................ 12

            1. Proffer Statements ......................................................................................... 12

        B.    Discussion.................................................................................................................. 14

CONCLUSION...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Costantino* v. *Herzog*, 203 F.3d 164 (2d Cir. 2000) ........................................................... 6

*Huddleston* v. *United States*, 485 U.S. 681 (1998) ............................................................... 6

*United States* v. *Barrow*, 400 F.3d 109 (2d Cir. 2005) ....................................................... 13

*United States* v. *Brady*, 26 F.3d 282 (2d Cir. 1994). ........................................................... 5

*United States* v. *Carboni*, 204 F.3d 39 (2d Cir. 2000) .......................................................... 4

*United States* v. *Cooney*, 938 F.2d 1553 (2d Cir. 1991) ........................................................ 5

*United States* v. *Curley*, 639 F.3d 50 (2d Cir. 2011) ............................................................ 6

*United States* v. *Derosena*, 186 F. App'x 27 (2d Cir. 2006) .................................................. 8

*United States* v. *Downing*, 297 F.3d 52 (2d Cir. 2002) ..................................................... 9, 11

*United States* v. *Gomez*, 210 F. Supp. 2d 465 (S.D.N.Y. 2002) ...................................... 13, 14

*United States* v. *Gonzalez*, 110 F.3d 936 (2d Cir. 1997) ..................................... 4, 5, 7, 9

*United States* v. *Inserra*, 34 F.3d 83 (2d Cir. 1994) ..................................................... 5, 6, 8

*United States* v. *Lyle*, 856 F.3d 191 (2d Cir. 2017) ........................................................... 12

*United States* v. *Mezzanatto*, 513 U.S. 196 (1995) ........................................................... 12

*United States* v. *Mingo*, 76 F. App'x 379 (2d Cir. 2003) ................................................... 11

*United States* v. *Moran-Toala*, 726 F.3d 334 (2d Cir. 2013) ............................................... 6

*United States* v. *Pascarella*, 84 F.3d 61 (2d Cir. 1996) ...................................................... 11

*United States* v. *Paulino*, 445 F.3d 211 (2d Cir. 2006) ........................................................ 6

*United States* v. *Reed*, 576 F. App'x 60 (2d Cir. 2014) ...................................................... 11

*United States* v. *Roldan-Zapata*, 916 F.2d 795 (2d. Cir. 1990) ........................................... 6

*United States* v. *Rosemund*, 841 F.3d 95 (2d Cir. 2016) ............................................... 12, 13

*United States* v. *Rutkoske*, 506 F.3d 170 (2d. Cir. 2007) ..................................................... 6

*United States* v. *Towne*, 870 F.2d 880 (2d Cir. 1989) .......................................................... 4

*United States* v. *Velez*, 354 F.3d 190 (2d Cir. 2004) .......................................................... 12

*United States* v. *Watts*, No. S3 09 Cr. 62, 2011 WL 167627 (S.D.N.Y. Jan. 11, 2011) ................. 8

*United States* v. *Williams*, 205 F.3d 23 (2d Cir. 2000) ........................................................ 6

*United States* v. *Zackson*, 12 F.3d 1178 (2d Cir. 1993) ....................................................... 9

**Statutes**

18 U.S.C. § 1028A ............................................................................................................. 1

18 U.S.C. § 1343 ............................................................................................................... 1

18 U.S.C. § 1344 ............................................................................................................... 1

18 U.S.C. § 1349 ............................................................................................................... 1

18 U.S.C. § 1542 ............................................................................................................... 1

18 U.S.C. § 1956 ............................................................................................................... 1

18 U.S.C. § 2 ..................................................................................................................... 1

**Other Authorities**

Fed. R. Crim. P. 11(e)(6) ................................................................................................. 12

Fed. R. Evid. 402 ............................................................................................................... 6

Fed. R. Evid. 403 ....................................................................................................... 6, 10, 12

Fed. R. Evid. 404(b)...................................................................................................... passim

Fed. R. Evid. 410 ............................................................................................................... 12

Fed. R. Evid. 801(d)(2) ....................................................................................................... 8

## PRELIMINARY STATEMENT

The Government respectfully moves *in limine* seeking the following rulings with respect to the upcoming trial of defendants Joseph Atuana ("Atuana") and Ayodele Adeniran ("Adeniran"): (i) the Court should permit introduction of the defendants' prior arrests and Atuana's prior conviction related to bank fraud, as they are direct evidence of the charged offenses, and in the alternative, admissible other acts evidence pursuant to Rule 404(b) of the Federal Rules of Evidence; and (ii) the Court should enforce the terms of Atuana's proffer agreement.

## BACKGROUND

Superseding Indictment S4 16 Cr. 672 (the "Indictment") charges Atuana and Adeniran with: (i) conspiring to commit bank and wire fraud, in violation of Title 18, United States Code, Section 1349 ("Count One"); (ii) committing bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2 ("Count Two"); (iii) committing wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2 ("Count Three"); (iv) committing aggravated identity theft in connection with the commission of the offenses charged in Counts One, Two, and Three, in violation of Title 18, United States Code, Section 1028A(a)(1), (b), and 2 ("Count Four"); (v) conspiring to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) ("Count Five); and (vi) as to Atuana only, making a false statement in a passport application, in violation of Title 18, United States Code, Section 1542 ("Count Six").

The Government will establish at trial—through witness testimony, physical evidence, and documentary evidence—that the defendants engaged in a wide-ranging, multi-year fraud scheme that involved dozens of separate frauds and hundreds of different victims.

Between in or about April 2012, up to and including in or about 2016, Atuana and Adeniran

1

engaged in dozens of separate bank and wire fraud schemes, through which Atuana and Adeniran obtained hundreds of thousands of dollars of funds by defrauding banks, individuals, and corporations. (Compl. ¶¶ 8–9). Atuana and Adeniran then engaged in money laundering activities to move the funds between bank accounts controlled by Atuana and Adeniran or their co-conspirators. In total, Atuana and Adeniran intended an approximate total loss amount in excess of $2,000,000.

Atuana and Adeniran engaged in two primary varieties of fraudulent schemes, among others: an "account takeover" scheme and an "email spoofing" scheme. To effectuate the "account takeover" scheme, Atuana and Adeniran, along with their co-conspirators, would gain access to victims' bank accounts through fraudulent means, and cause money to be transferred from the victims to accounts controlled by Atuana and Adeniran, including through the issuance of checks, wire transfers, and automatic debit payments. To effectuate the "email spoofing" scheme, Atuana and Adeniran obtained funds by causing victim companies to transfer funds through the use of fraudulent e-mail solicitation, the proceeds of which were then deposited into bank accounts controlled by Atuana and Adeniran. (Compl. ¶¶ 8–9).

Adeniran and Atuana worked together to facilitate the fraud schemes. For example, PNC Bank records show that Atuana opened a "Lets Fete LLC"[1] business account at PNC Bank in January 2014. (Compl. ¶ 11). Over the course of the next few months, the account received nearly a half a million dollars in ACH debit transactions. Over $150,000 in those funds were returned as unauthorized. Video surveillance from PNC Bank shows that Atuana withdrew funds from that

---

[1] Records from the State of New York also show that Atuana is the only individual listed as an agent of Lets Fete LLC.

2

account.  Further, more than $250,000 of these funds were transferred to a bank account in the name of ATA Crescent Corporation at People's United Bank which was controlled by Adeniran ("Adeniran's People's United Account").[2]  From there, the money was used to fund account withdrawals, outgoing wires, and cashier's checks, including cashier's checks written to Lets Fete LLC.  *Id.*

Adeniran and Atuana also worked together to perpetrate the email spoofing scheme. (Compl. ¶¶ 20–32).  For example, in 2014, a series of phony emails were sent to a company in Canada, with instructions to wire money to a Lets Fete LLC account at Lower East Side People's Federal Credit Union.  (*Id.* ¶ 21).  The CEO of the company did not actually send the email or authorize the wire.  The Lets Fete LLC account was controlled exclusively by Atuana.  After the approximately $35,000 in funds were transferred into the Lets Fete LLC account, the funds were quickly withdrawn: within two days, the account balance was approximately $50.  Notably, nearly $30,000 in checks were made out to Adeniran's People's United Account.  The majority of those funds were then debited from Adeniran's People's United Account via two cash withdrawals.

## DISCUSSION

I.    **The Defendants' Prior Arrests and Atuana's Conviction Are Admissible As Direct Proof, or in the Alternative, Other Acts Evidence**

The Government seeks to introduce evidence related to: (i) Atuana's 2014 New York State arrest in connection with the deposit of a fraudulent check, and his ultimate conviction of disorderly conduct; and (ii) Adeniran's 2010 and 2016 New York State arrests for grand larceny and identity theft.

---

[2] Records from the State of New York list Adeniran as the registered agent of ATA Crescent Corporation.

*First*, this evidence is admissible as direct proof of the bank and wire fraud offenses charged in the Indictment.  Among other things, the proffered evidence includes specific acts of bank fraud committed over the course of the defendants' multi-year conspiracy, and is direct proof of the crimes charged.  *Second*, this evidence is admissible under Federal Rule of Evidence 404(b), as it "prov[es] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).

### A.    Applicable Law

#### 1.   Other Acts Evidence as Intrinsic or Direct Proof

While the admissibility of uncharged or "other acts" evidence is generally governed by Fed. R. Evid. 404(b), evidence of uncharged acts is admissible—without regard to Rule 404(b)—when it constitutes intrinsic or direct proof of the charged crimes.  *See, e.g.*, *United States* v. *Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *see also* Weinstein's Federal Evidence, § 404.20[2][b] (noting that evidence of other wrongs is admissible without regard to Rule 404(b) where those wrongs "were necessary preliminaries to the crime charged"); § 404.20[2][c] (noting that evidence of other acts "is admitted if it contributes to an understanding of the event in question, even if it reveals crimes other than those charged, because exclusion under those circumstances would render the testimony incomplete and confusing").  It is "well established" that prior bad acts are "not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if [they] arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense or if it is necessary to complete the story of the crime on trial."  *United States* v. *Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) (quoting *United States* v. *Towne*, 870 F.2d 880, 886 (2d Cir. 1989)) (internal quotation marks omitted).  Even if the evidence

4

does not directly establish an element of the offense charged, it can be admitted "in order to provide background for the events involved in the case . . . for example, the circumstances surrounding the events." *United States* v. *Cooney*, 938 F.2d 1553, 1561 (2d Cir. 1991).  In particular, "evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense." *United States* v. *Inserra*, 34 F.3d 83, 89 (2d Cir. 1994); *see also Gonzalez*, 110 F.3d at 941 ("To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency.  Relevant evidence is not confined to that which directly establishes an element of the crime.").

### 2.  Other Acts Evidence Pursuant to Rule 404(b)

Alternatively, evidence of prior acts may be introduced pursuant to Fed. R. Evid. 404(b). The rule provides, in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b).  The district court has broad latitude in determining whether to admit evidence pursuant to Rule 404(b), and its ruling will be reviewed only for abuse of discretion.  *See Inserra*, 34 F.3d at 89; *United States* v. *Brady*, 26 F.3d 282, 286 (2d Cir. 1994).   In general, evidence is admissible under Rule 404(b) "if (1) it is introduced for a proper purpose, (2) it is relevant to the charged offense, (3) its prejudicial effect does not substantially outweigh its probative value and (4) is admitted with a limiting instruction if requested." *United States* v.

5

*Rutkoske*, 506 F.3d 170, 176-77 (2d Cir. 2007) (citing *Huddleston* v. *United States*, 485 U.S. 681, 691-92 (1998)).

Notably, the Second Circuit has adopted an "inclusionary approach" which permits the admission of other crimes or acts for "any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." *Inserra*, 34 F.3d at 89; *see also United States* v. *Moran-Toala*, 726 F.3d 334, 345 (2d Cir. 2013) (quoting *United States* v. *Curley*, 639 F.3d 50, 56 (2d Cir. 2011)) (noting that the Second Circuit "follows the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402.").

While any evidence, including evidence offered pursuant to Rule 404(b), is subject to the balancing test set forth in Rule 403, the Second Circuit has long made clear that "other act" evidence that is neither "more sensational" nor "more disturbing" than the charged crimes will not be deemed unfairly prejudicial. *Roldan-Zapata*, 916 F.2d at 804; *see also United States* v. *Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000); *United States* v. *Paulino*, 445 F.3d 211, 223 (2d Cir. 2006); *cf. Costantino* v. *Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair.").

6

### B.     Discussion

The Government expects to offer at trial evidence of the following events, all of which is admissible for the reasons set forth below.

#### 1.   Atuana's New York State Arrest and Conviction

Atuana was arrested on July 30, 2014 in Plattsburgh, New York, and charged with Grand Larceny in the Fourth Degree, after he cashed a fraudulent and unauthorized check, made payable to "JHA Alliance Corp.," drawn on the account of a medical billing company, into his account at Glen Falls National Bank.  Atuana's attorney later wrote a letter to the Clinton County District Attorney to seek leniency for Atuana on the basis that Atuana was the "victim of a much larger scheme," and believed he was doing legitimate work for a "call center."  As a result, Atuana was permitted to plead to Disorderly Conduct, a violation, and pay a fine.  Atuana continued engaging in dozens of separate bank frauds after this date.

It is "well established" that bad acts are "not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if [they] arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense or if it is necessary to complete the story of the crime on trial." *Gonzalez*, 110 F.3d at 942 (internal citation omitted).  Atuana deposited a fraudulent check, made out to a business he controlled, and through which he committed numerous other bank frauds, into his bank account.  The Government expects to prove that Atuana committed this same fraud on numerous other occasions.  Evidence of Atuana's prior arrest is thus direct evidence of Counts One and Two and should be admitted.

Alternatively, evidence of Atuana's arrest and conviction is admissible to demonstrate Atuana's "intent, knowledge, and lack of mistake" and to "complete [the] story" of the charged

offenses.  The Government anticipates that Atuana may argue that he believed he was engaging in legitimate business transactions, or that he was not aware that the checks and wire transfers into his bank accounts were fraudulent.  Atuana's 2014 arrest and conviction are sufficiently similar to the charged conduct and directly relevant in order to show that he was, or should have been, aware that he was committing bank fraud but nonetheless continued to do so.  *See, e.g.*, *United States* v. *Derosena*, 186 F. App'x 27, 29 (2d Cir. 2006) (upholding admission of prior fraudulent acts in bank fraud trial to show the defendant's "knowledge and intent"); *United States* v. *Watts*, No. S3 09 Cr. 62, 2011 WL 167627, at *6 (S.D.N.Y. Jan. 11, 2011) (noting that evidence of similar frauds is "routinely admissible in fraud cases such as this one[ ]" and allowing evidence of tax fraud where defendant was accused of, among other charges, violating RICO and conspiring to commit money laundering).  The Government should be permitted to introduce evidence of Atuana's prior arrest in order to disprove any argument or suggestion that Atuana continued to believe that he was engaging in legitimate business transactions in the years following his 2014 arrest.[3]  *See, e.g.*, *United States* v. *Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged." ); *United States* v. *Downing*, 297 F.3d 52, 59 (2d Cir. 2002) (noting that defendant's contention that he "neither knew about nor intended to facilitate" fraud "made evidence of his previous participation in a substantially similar scheme highly probative").

---

[3] The letter sent to the Clinton County District Attorney by Atuana's attorney is admissible as a statement of a party opponent, pursuant to Rule 801(d)(2) of the Federal Rules of Evidence.

Such evidence is necessary to provide "context" and "complete [the] story of the crimes charged." *Inserra*, 34 F.3d at 89 ("[E]vidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense."); *see also Gonzalez*, 110 F.3d at 941 ("To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime."). Atuana's 2014 arrest is necessary to provide context for the larger bank fraud scheme. In 2014, Atuana was arrested and charged with the same type of bank fraud—depositing a fraudulent check into his own account—that he went on to commit on dozens of other occasions, as charged in the Indictment. Atuana received a substantial benefit in pleading to a violation, rather than a felony, based on his claim of innocence. Yet knowing all this, Atuana went on to perpetrate the same fraud scheme on numerous other occasions. Evidence of Atuana's arrest and conviction are necessary to show Atuana's knowledge of the fraudulent scheme, intent to continue to defraud victims and banks, and to complete the story of the crimes charged.

Finally, if admitted pursuant to Rule 404(b),[4] evidence of a single instance of bank fraud is no more inflammatory nor prejudicial than the crimes charged, which include a wide-ranging

---

[4] Should the Court admit evidence of the defendants' prior arrests and conviction pursuant to Rule 404(b), the Government will confer with the defense and propose an appropriate limiting instruction for the Court's consideration.

and long-running bank fraud conspiracy.  *See* Fed. R. Evid. 403; *Roldan-Zapata*, 916 F.2d at 804.

Evidence of Atuana's 2014 arrest and conviction should be admitted at trial.

### 2.  Adeniran's New York State Arrests

On December 9, 2010, Adeniran was arrested in Queens, New York, and charged with

Grand Larceny in the First and Second Degrees, Criminal Possession of Stolen Property in the

Second Degree, Forgery in the Second Degree and Identity Theft in the First Degree, after he

received more than $1,000,000 in unauthorized remote check deposits into his Citibank business

account.  Adeniran quickly wired more than $800,000 out of his Citibank account after the

unauthorized checks were deposited, and before the bank could determine the checks were

unauthorized.  Adeniran pled guilty on July 9, 2012 to Grand Larceny in the Second Degree, and

was sentenced to 5 years' probation.[5]

On February 23, 2016, Adeniran was arrested in Manhattan and charged with Criminal

Possession of Stolen Property in the Third Degree, Identity Theft in the First Degree, and Grand

Larceny in the Third Degree, after he deposited two unauthorized checks into his Apple Bank

account, in the amount of $9,850 and $15,850.  After the first check cleared, Adeniran withdrew

nearly the full amount of the check within three days.  Two days later, Adeniran withdrew the

remaining $500.  After he was arrested, Adeniran waived his *Miranda* rights, and stated, among

other things, that he was an event planner and that the checks he had deposited were business loans.

He also claimed that he did not know who the business loans were from.  Adeniran is scheduled

---

[5] The Government does not intend to introduce evidence of Adeniran's 2012 conviction in its direct case.  However, should Adeniran testify, the Government intends to cross-examine Adeniran regarding this conviction pursuant to Rule 609(a)(1)(B) of the Federal Rules of Evidence.

to proceed to trial in February 2018 in New York County Criminal Court in connection with these charges.

Evidence of Adeniran's prior state arrests (including the conduct underlying those arrests, and his post-arrest statements) is admissible as direct proof of Counts One and Two.  They involve the same banks, same entities, and same methods of fraud as charged in the Indictment.  On this basis, they are admissible.  Moreover, the fact that one arrest predated the time period charged in Counts One and Two is of no matter, because the conduct leading to Adeniran's arrest "arose out of the same transaction or series of transactions as the charged offense."  *United States* v. *Reed*, 576 F. App'x 60, 61 (2d Cir. 2014) (affirming introduction of evidence pre-dating charged conspiracy where proffered evidence "arose out of the same transaction or series of transactions as the charged offense, . . . is inextricably intertwined with the evidence regarding the charged offense, or . . . is necessary to complete the story of the crime on trial." (internal citation omitted)).

Alternatively—and much the same as Atuana's prior arrest—evidence that Adeniran was arrested on multiple occasions for depositing fraudulent checks into his business accounts is critical to provide the "background" of the charged offenses, as well as to demonstrate Adeniran's knowledge of the fraudulent scheme, intent to continue to commit the fraudulent scheme, and lack of mistake in committing the fraudulent scheme.  *United States* v. *Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) (where defendant's knowledge of whether checks were stolen was at issue, introduction of evidence that "other stolen checks had been recently deposited in the same bank account was highly relevant to that question" and admissible to demonstrate the defendant's knowledge).  Indeed, the fact that Adeniran was arrested in 2010, and presumably on notice that his deposit of funds into his own accounts was fraudulent, yet continued to commit bank and wire fraud for years

11

after the fact, is highly probative of Adeniran's criminal knowledge and intent. *See United States* v. *Mingo*, 76 F. App'x 379, 382 (2d Cir. 2003) ("When knowledge and intent are disputed, a defendant's commission of similar bad acts is generally deemed probative"); *United States* v. *Downing*, 297 F.3d 52, 59 (2d Cir. 2002) (holding that where defendant disputed his knowledge and intent to facilitate securities fraud by producing false audit reports, evidence of his prior preparation of false audit reports in connection with a similar fraud scheme was properly admitted).

Finally, Adeniran's prior arrests for bank fraud and identity theft-related crimes are no more prejudicial than the bank fraud and identity theft charges for which he now stands trial. *See* Fed. R. Evid. 403; *Roldan-Zapata*, 916 F.2d at 804. The Court should admit evidence of Adeniran's prior state arrests.

## II.      The Court Should Enforce the Terms of Atuana's Proffer Agreement

### A.      Applicable Law

#### 1.  Proffer Statements

Although statements made during plea negotiations are inadmissible, Fed. R. Evid. 410; Fed. R. Crim. P. 11(e)(6), the Supreme Court has held that a defendant may waive the right to prevent the use of such statements without raising any question of a violation of constitutional magnitude, as long as the waiver is knowing and voluntary. *United States* v. *Mezzanatto*, 513 U.S. 196 (1995). In *Mezzanatto*, the Court held that the protections in those rules are waivable for purposes of impeachment or rebuttal since "[a] criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *Id.* at 201.

The Second Circuit has specifically held that proffer agreements containing provisions identical to those contained in the Proffer Agreement executed by Atuana (attached hereto as Exhibit A) are entirely enforceable. *See United States* v. *Lyle*, 856 F.3d 191 (2d Cir. 2017); *United*

*States* v. *Rosemund*, 841 F.3d 95, 107 (2d Cir. 2016); *United States* v. *Velez*, 354 F.3d 190 (2d Cir. 2004) ("[W]here a proffer agreement is entered into knowingly and voluntarily, a provision in which defendant waives his exclusionary privilege under Federal Rule of Evidence 410 by permitting the Government to introduce defendant's proffer statements to rebut contrary evidence or arguments presented by the defense, whether or not defendant testifies, is enforceable."); *see also United States* v. *Gomez*, 210 F. Supp. 2d 465 (S.D.N.Y. 2002) (Chin, J.) (explaining various legal and policy reasons why proffer agreements virtually identical to the Proffer Agreement are enforceable).

In examining whether a defendant has triggered the proffer agreement's waiver provision permitting the defendant's proffer statements to be introduced at trial for rebuttal purposes, courts look to whether "there has been any evidence offered or elicited, or factual assertion made, by or on behalf of the defendant that would trigger the Rule 410 waiver"; and if so, "whether the proffer statement fairly rebut[s] the fact asserted or evidence offered or elicited." *Rosemund*, 841 F.3d at 107 (internal quotation marks omitted) (citing *United States* v. *Barrow*, 400 F.3d 109, 117-21 (2d Cir. 2005)). Under the terms of the Proffer Agreement, therefore, defense counsel is free to present a defense and to argue, for example, that the Government has failed to prove its case beyond a reasonable doubt (or failed to present "credible" evidence). *Id.* at 109-10 (summarizing factual assertions sufficient, and insufficient, to trigger a proffer agreement's waiver provision). Counsel cannot do so, however, in a manner that directly or indirectly contradicts facts elicited during the proffer meeting without triggering the waiver provision of the proffer agreement. *Id.*

13

### B.   Discussion

The Government will seek to introduce Atuana's proffer statements if his counsel takes a position inconsistent with those statements—whether in opening statement, through cross-examination, during summation, or otherwise—or if Atuana testifies.  Consistent with the express terms of the Proffer Agreement, the Government would have a right, and a duty, to use Atuana's proffer statements to rebut untruthful arguments advanced at trial that contradict Atuana's own admissions made during his proffer session.[6]   As the principles outlined above make clear, to permit Atuana to present evidence or make arguments that are contrary to his own statements in the proffer session—without also permitting the jury to assess that evidence in light of that proffer—would thwart the truth-seeking purpose of a trial and would be tantamount to a fraud on the jury and the Court.  *See Gomez*, 210 F. Supp. 2d at 472.  In addition, under the express terms of the Proffer Agreement, the Government is permitted to use Atuana's proffer statements at trial during cross-examination, should Atuana choose to testify.  *See* Ex. A at 1.

The Government respectfully requests that, in the event that any of those waiver-triggering circumstances occurs, the Court enforce the express terms of the Proffer Agreement and permit the Government to use Atuana's proffer statements.  Further, to the extent that Atuana's counsel takes a position contrary to Atuana's proffer statements during summation, the Government would request that evidence be reopened to permit the Government to offer evidence of Atuana's proffer statements, in accordance with the terms of the Proffer Agreement.

---

[6] Notes from Atuana's proffer session are attached as Exhibit B, and are respectfully requested to be filed under seal until such time as Atuana or his counsel waive, or caused to be waived, the protections of the proffer agreement.

## **CONCLUSION**

The Court should grant the Government's motions *in limine* in their entirety.

Dated:   New York, New York
      December 26, 2017

             Respectfully submitted,

             JOON H. KIM
             Acting United States Attorney
             Southern District of New York


         By: /s/          
             Rebekah Donaleski/ Nicholas Folly/
             Andrew D. Beaty
             Assistant United States Attorneys
             Southern District of New York
             (212) 637- 2423/1060/2198